1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon Harrington,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV10-08225-PCT-NVW<br><br>**ORDER** |

Sharon Harrington seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background**

    **A.     Factual Background**

Harrington was born on July 3, 1963. She has worked as a home attendant, office manager, receptionist, records technician, and waitress. Beginning in August 2008, Harrington cared for her husband for about three months after he suffered a stroke. At the time of the administrative hearing, Harrington worked approximately 95 hours per month

as an in-home care provider for her mother and was paid $9.00 per hour by the State of California. She testified that she set up medications and assisted her mother transferring from her bed to a chair, and her family did "the rest of it."

In 1994, Harrington received an on-the-job injury to her right wrist, for which she underwent fusion in 1995 and radial nerve surgery . Subsequently, she experienced low back and neck pain radiating into her right arm. In 2007, she had a spinal stimulator inserted, which eliminated her right arm pain, but not her back pain. She also has been diagnosed with sacroiliac joint disorder.

### B. Procedural History

On April 29, 2008, Harrington applied for disability insurance benefits and supplemental security income, alleging disability beginning December 20, 2007, due to lumbar spine and sacroiliac joint disorders, bilateral carpal tunnel syndrome, gastritis, and depression. Both applications were denied on initial review and again on reconsideration, after which Harrington requested that her claim be heard by an ALJ. On March 29, 2010, an administrative hearing was held in San Bernadino, California, at which Harrington testified and was represented by counsel. Arthur Lorber, M.D., an impartial medical expert, and David A. Rinehart, an impartial vocational expert, also appeared and testified at the administrative hearing.

On May 18, 2010, the ALJ issued his decision that Harrington was not disabled within the meaning of the Social Security Act. He found that Harrington retained the capacity to perform a reduced range of light work:

> . . . the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours out of an 8-hour work day, and she can sit for 6 hours out of an 8-hour work day. She cannot perform power gripping with the right upper extremity; she can perform occasional overhead reaching with the right upper extremity. She cannot climb ladders, ropes, or scaffolds.

1 | In reliance upon vocational expert testimony, the ALJ found that Harrington is capable of
2 | performing past relevant work as an office manager, receptionist, medical records
3 | technician, and waitress.
4 | On September 21, 2010, the Appeals Council denied Harrington's request for
5 | review of the ALJ's unfavorable decision. On September 21, 2010, the Appeals Council
6 | declined to set aside the ALJ's decision, making that decision the final decision of the
7 | Commissioner. On November 19, 2010, Harrington sought judicial review of this
8 | decision pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose,

- 3 -

the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III.     Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's

residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**IV.   Analysis**

The ALJ found that Harrington meets the insured status requirements of the Social Security Act through December 31, 2012, and, at step one, she has not engaged in substantial gainful activity since December 20, 2007. At step two, the ALJ found that Harrington has the following severe impairments: status post fusion of the right wrist, degenerative disc disease, and peripheral neuropathy. The ALJ also found that Harrington's "medically determinable mental impairments consisting of carpal tunnel syndrome and depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." At step three, the ALJ found that Harrington does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Harrington does not raise any issues related to the ALJ's determinations at the first three steps of the five-step sequential evaluation process. Harrington challenges the ALJ's weighing of medical source evidence in making his determination of Harrington's residual functional capacity at step four.

**A.   Legal Standard for Weighing Medical Source Evidence**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating

physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given *controlling* weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and

extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

**B. The ALJ Did Not Err by Rejecting Examining Physician Dr. Douglas Larson's Mental Residual Functional Capacity Assessment.**

Harrington contends the ALJ erred by failing to articulate specific and legitimate reasons for not accepting Dr. Larson's finding that Harrington's depressive disorder was severe. On August 15, 2008, Dr. Larson, a State agency psychological consultant, examined Harrington. His report states, among other things:

> This is a pleasant woman who is suffering from depression and pain and is not being helped by being on several strong narcotics to control her pain. She clearly needs a pain management program and serious counseling to learn how to cope with her life.
>
> I rated the claimant as 51 on the GAF because she is having moderately severe symptoms and impairment. She is having difficulty with judgment, thinking, mood, anxiety and as a result [*sic.*] is leading to impairment in her work performance.

Dr. Larson also reported: "The claimant's psychiatric prognosis is fair with treatment." Based on his examination, Dr. Larson provided the following functional assessment:

> 1. She is mildly impaired in her ability to understand, remember, and complete simple commands.

- 7 -

2. She is moderately impaired in her ability to do [sic.] understand, remember, and complete complex commands because of her memory problems and depression.

3. She is moderately impaired in her ability to interact appropriately with supervisors, co-workers or the public as indicated by her social withdrawal and avoidance of work.

4. She is mildly impaired in her ability to comply with job rules such as safety and attendance.

5. She is mildly impaired in her ability to respond to change in the normal workplace setting.

6. She is mildly impaired in her ability to maintain persistence and pace in a normal workplace setting.

The ALJ stated:

The undersigned does not accept Dr. Larson's finding that the claimant's depressive disorder is severe. His examination of the claimant was essentially benign and did not reveal evidence of significant depression. While the record reflects that the claimant is taking an anti-depressant, her treating sources have not referred her to a psychiatrist, and any depressive or anxiety symptoms have been situational in nature and due primarily to the claimant['s] financial problems.

Even if the ALJ had accepted Dr. Larson's finding that Harrington's depressive disorder was "moderately severe," Dr. Larson opined that Harrington's depression caused her only mild and moderate limitations. "Mild" and "moderate" limitations resulting from "moderately severe" symptoms of depression do not preclude performing substantial gainful activity. *See Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) ("We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."). Thus, even if the ALJ had accepted Dr. Larson's opinion fully, doing so would not have affected the determination of her residual functional capacity.

**C.   The ALJ Did Not Err by Granting No Weight to Treating Physician Dr. Arvind Salwan's Residual Functional Capacity Assessment.**

Harrington contends the ALJ erred by granting no weight to the residual functional capacity assessments of treating physician Dr. Salwan. However, the ALJ did not assign "no weight" to the 2009 questionnaire in which Dr. Salwan assessed Harrington's

residual functional capacity. Rather, he said he did not adopt or agree with Dr. Salwan's opinion finding disability, which was expressed in a letter in 2008.

On October 20, 2008, Dr. Salwan submitted a letter stating that Harrington was his patient, and she had been diagnosed and was receiving treatment for myofascial pain syndrome, sacral iliac joint arthropathy, and lumbar facet arthropathy. His letter also stated: "Sharon has been disabled since November 2006."

In his hearing decision, the ALJ stated:

> In a letter dated October 20, 2008, Dr. Salwan reported that the claimant had diagnoses of myofascial pain syndrome, sacral iliac joint arthropathy, and lumbar facet arthropathy, which rendered her disabled (Exhibit 12F, p.2).
>
> The undersigned does not adopt nor agree with Dr. Salwan's opinion because it is not supported by his treatment notes or by the other evidence. Moreover, a finding of disability is one that is reserved to the Commissioner (SSR 96-5p), and Dr. Salwan never indicated what the claimant could do despite her impairments. It is believed that Dr. Salwan was motivated more out of sympathy for the claimant in writing this letter as the substantial evidence does not support his opinion.

The ALJ was not required to adopt or agree with Dr. Salwan's opinion that "Sharon has been disabled since November 2006." Whether an individual is "disabled" under the Social Security Act is an issue reserved to the Commissioner, and "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." Social Security Ruling 96-5p.

Further, the determination of an individual's residual functional capacity also is an issue reserved to the Commissioner. *Id.* Although the ALJ did not specifically reference Dr. Salwan's responses to a Multiple Impairment Questionnaire, he was not required to discuss it or give it controlling weight or special significance, only to consider it. The ALJ explicitly relied on and cited to Dr. Salwan's treatment records, including records dated the same day as the Multiple Impairment Questionnaire, which stated Harrington had normal range of motion and strength and no joint enlargement or tenderness in each of her four extremities and she could "undergo exercise testing and/or participate in exercise program."

1    Moreover, even if the ALJ were required to articulate how much weight he
2 assigned to Dr. Salwan's responses to a Multiple Impairment Questionnaire, the omission
3 was harmless because Dr. Salwan's responses to the questionnaire are internally
4 inconsistent and conflict with Harrington's testimony and written statements by
5 Harrington and her husband.  On October 7, 2009, Dr. Salwan completed a Multiple
6 Impairment Questionnaire in which he described Harrington's pain as severe, located in
7 her neck and lower back, occurring "all the time," and precipitated by "moving, lifting,
8 picking up objects."  He estimated her level of pain as 9 out of 10 and said her pain had
9 not been completely relieved by medication without unacceptable side effects.  Dr.
10 Salwan opined that Harrington could sit 0-1 hours and stand/walk 0-1 hours in an 8-hour
11 work day, occasionally lift 0-5 pounds and never more than that, and never carry any
12 weight at all.  He also inconsistently opined that she did not have any significant
13 limitations in repetitive reaching, handling, fingering, or lifting, but she had moderate
14 limitations in grasping, turning, twisting objects and using fingers/hands for fine
15 manipulations and marked limitation using arms for reaching (including overhead).  Dr.
16 Salwan said Harrington's condition would preclude her from performing full-time work
17 that required keeping her neck in a constant position (*e.g.*, looking at a computer screen,
18 looking down at a desk).  He also said her pain, fatigue, or other symptoms were severe
19 enough to constantly interfere with attention and concentration and she would need to
20 take unscheduled breaks every 15-20 minutes to rest for 15-20 minutes.  Dr. Salwan
21 further opined that Harrington's impairments were likely to produce "good days" and
22 "bad days" and she likely would be absent from work more than three times a month.
23 Finally, he said that she was limited to no pushing, no pulling, no kneeling, no bending,
24 and no stooping.
25    In contrast, Harrington testified that she is able to set up her mother's medications,
26 do some housecleaning, go grocery shopping, and lift ten pounds.  She said that in an
27 8-hour day, she could stand for a total of 4 hours with breaks every half hour and sit for a
28 total of 4 hours with breaks every half hour.  Although she alleges disability beginning

- 10 -

1  December 20, 2007, she said that for a period of about three months beginning in August
2  2008 she cared for her husband who had a stroke. In June 2008, she completed a
3  Function Report in which she said that she gives her mother medications and takes her to
4  medical appointments, feeds and bathes pets, shares meal preparation duties with her
5  husband, does light cleaning, shops for groceries and necessary items, regularly attends
6  church, and can drive by herself unless taking pain medications. Also in June 2008,
7  Harrington's husband completed a Function Report in which he said that Harrington feeds
8  their pets, washes dishes about once a week, goes grocery shopping with her husband for
9  three hours once a week, watches television two hours per day, and communicates with
10  others on the computer once a day. He also said she could lift up to 25 pounds.

11  Harrington contends that the ALJ's observation that "Dr. Salwan never indicated
12  what the claimant could do despite her impairments," is incorrect because Dr. Salwan
13  estimated "she can sit no more than one hour, stand/walk no more than one hour, and lift
14  no more than five pounds occasionally. . . ." In fact, Dr. Salwan indicated she could sit
15  "0-1" hours, stand/walk "0-1" hours, and lift "0-5" pounds, which the ALJ could have
16  reasonably interpreted as meaning no sitting, no standing or walking, and no lifting.

17  Thus, the ALJ did not err by not adopting or agreeing with Dr. Salwan's 2008
18  opinion finding disability because it was not supported by his treatment notes or by the
19  other evidence and opined on an issue reserved to the Commissioner. Although the ALJ
20  did not make an express finding regarding Dr. Salwan's 2009 functional assessment, he
21  expressly considered Dr. Salwan's treatment notes and was not required to assign weight
22  to Dr. Salwan's determination of Harrington's residual functional capacity.

23  IT IS THEREFORE ORDERED affirming the final decision of the Commissioner
24  of Social Security denying Sharon Harrington disability benefits.

25  ///
26  ///
27  ///
28

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 22nd day of August, 2011.

_____
Neil V. Wake
United States District Judge